Ruffin, J.
 

 The money and debts due to the testator, are given to his wife absolutely; and the plaintiffs have no interest therein. As to them, then, the bill must be dismissed.
 

 There is no express gift in the will, of the provisions or crops on hand,
 
 eo nomine.
 
 But they are otherwise sufficient
 
 *368
 
 ly given specifically. Such a gift might certainly be expected to accompany the universal devise of all the land and plantations, with the stocks of every kind on them, and the slaves, as needful, if not indispensable to keeping house and carrying on the plantations and supporting the slaves. But other parts of the will leave no doubt on that point. After giving the stocks, working tools, furniture, &c., to his wife for life, and legacies to two of his daughters, the testator adds emphatically, “ now, my will is, that all my household and kitchen furniture, horses, cattle, sheep,
 
 and all the rest of my chattel-property of every
 
 description, after taking out the chattel-property I have given to my two daughters, A. C. and Ii. D., shall be equally divided between my lawful heirs after the death of my wife,” which 'would, under the circumstances, raise a strong implication of a gift of all the chattel-property, as he calls it, to the wife for life. If, however, that were not sufficient, every thing that is wanting is supplied in the codicil, which declares that all the gifts in the will, to the children, are to be subject to a life-estate in his wife. The crops and provisions, therefore, stand as gifts to the wife for life, like the stocks and furniture, and tools.
 

 The gifts are all specific, and the question is, what interest .the tenant for life and the remaindermen take in the things. It is perfectly clear that, here, the testator expected and intended that his wife, with a large family of children, and some slaves, should enjoy the things themselves. But wo do not take that to be conclusive as to the rule of law, founded on the terms of the gifts in his will, excepting only, that there is generally, in such dispositions, something in the will, or the circumstances of the family, to denote that to be the pervading intention and expectation of testators, thus giving a clew to the proper construction. ¥e think, however, after some reflection, that where a testator expressly7 gives, specifically7, for life, with a limitation over, things which
 
 ipso usu consiomuntur,
 
 the Court has no power to control the disposition of the testator by denying that use to the first taker, which has been bestowed by the will, although it may impair the value,
 
 *369
 
 or extinguish the existence of the thing itself, to the loss of the ulterior taker. It must be taken that the testator had considered the chances of benefit to those in remainder, after the prior benefit bestowed by him on the first taker, and that he only meant to limit over those chances. It seems to be entirely unwarrantable to sell the things in the first instance, giving the interest to the tenant for life, and securing the capital for those to take afterwards, as is the rule when such things are given in a residuary clause ; for that would amount to this, that neither the first nor the last taker should have them as given; that is, specifically. No other rule, therefore, can he devised, hut that the tenant for life is entitled to the possession and enjoyment of the things according to the ordinary use of them in the country. It is admitted that this gives the advantage to the tenant for life, as she may thus get the whole and the remaindermen nothing. But that results from the will of the owner, and there is no power to restrain him in that respect. Indeed, it is generally apparent, that the chief benefit is meant for the first taker, who is commonly the widow, for whose comfort and the maintenance of the family, such provisions are usually made. If the tenant for life, instead of using the things, and thereby consuming them, wantonly destroy them or sell them, undoubtedly, she would be responsible for the value of them, or the price, but not otherwise. Nothing of that kind exists here, but the only question is, whether her estate is liable for the value of those things, which did not remain specifically at her death, but were consumed in the enjoyment of them. For such as were consumed the Court holds that she is no more responsible, than she would be for the impaired value, by age or decay, of those which were on hand at her death. The remaindermen must take all together in the state in which she left them without her fault. It follows that she is not bound to replace, with others, such as died, or were worn out. With respect to the profits of the slaves, between the death of Mrs. Spruill, and the division, the parties are liable to account, whether received by them respectively in the form of hire or labor.
 
 *370
 
 These declarations will probably enable the parties to settle without sending the case before the master, which we suppose to have been the purpose of bringing on the case in its present form. The defendant will be entitled to his costs, and may retain them out of the fund in his hands, if sufficient.
 

 Pee Curiam, Decree accordingly.